**SOUTHERN PACIFIC TRANSPORTATION COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. R–77–0180 TJM.**

United States District Court,
E. D. California.

Aug. 31, 1978.

James Diepenbrock, Jack V. Lovell, Carol A. Huddleston, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., for plaintiff.

Herman Sillas, U. S. Atty., Robert Browning Miller, James S. Joiner, Asst. U. S. Attys., Sacramento, Cal., for defendant.

## OPINION

MacBRIDE, Chief Judge.

This opinion addresses the question of whether the Southern Pacific Transportation Company, plaintiff herein, as part of its case in chief against the defendant, United States, must carry the burden of proving that it was free of any contributory negligence. The United States argues that this result is mandated by the application of the so-called Carmack Amendment, 49 U.S.C. § 20(11), with its attendant burdens of proof.

Briefly, the factual and procedural setting of this case is as follows. On April 28, 1973, eighteen bomb-laden boxcars exploded in the Antelope Yard of the Southern Pacific Transportation Company (hereinafter, Southern Pacific) in Roseville, California. These boxcars and bombs, both the property of the United States, were being transported by Southern Pacific, under a contract with the Department of the Navy, from Hawthorne, Nevada to Port Chicago, California.

Southern Pacific brought this suit against the United States pursuant to the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., for damages

allegedly sustained by the Antelope train-yard as a result of the explosions. Southern Pacific also seeks recovery, *inter alia*, for loss of freight revenues, loss of use of corporate capital, and indemnification or contribution for sums paid in settlement of third party claims. These alleged damages total approximately $40 million. The defendant, United States, filed an answer and counterclaim against Southern Pacific seeking recovery for loss of its bombs and box-cars and indemnification and contribution for any third party claims against the United States.

Since November of 1977, this court, sitting without a jury, has heard evidence put on by Southern Pacific in support of its claim against the United States. The United States contends that the Carmack Amendment applies to a carrier's claim against a shipper for damages allegedly suffered by the carrier during its transportation of the shipper's goods. Thus, the United States contends that Southern Pacific, in order to recover its damages in the instant case, bears a double burden of proof that: (1) the United States was negligent and that such negligence was a proximate cause of Southern Pacific's damages; and (2) Southern Pacific itself was free of any contributory negligence. Southern Pacific urges that the Carmack Amendment is in-applicable to its claim, and hence, that the burden of proof on the issue of contributory negligence rests, not upon it, but rather upon the defendant.

The Carmack Amendment provides:

§ 20, par. (11). *Liability of initial and delivering carrier for loss; limitation of liability; notice and filing of claim.* Any common carrier, railroad, or transportation company subject to the provisions of this chapter receiving property for transportation from a point in one State . . . to a point in another State, . . . shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such proper-ty may be delivered or over whose line or lines such property may pass within the United States . . . when transported on a through bill of lading, and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier, railroad, or transportation company from the liability imposed; and any such common carrier, railroad, or transportation company so receiving property for transportation from a point in one State, . . . to a point in another State . . . or any common carrier, railroad, or transportation company delivering said property so received and transported shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it or by any such common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass . . . when transported on a through bill of lading, notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is declared to be unlawful and void: . . . *Provided further,* That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law: *Provided further,* That all actions brought under and by virtue of this paragraph against the delivering carrier shall be brought, and may be maintained, if in a district court of the United States, only in a district, and if in a State court, only in a State through or into which the defendant carrier operates a line of railroad: *Provided further,* That it shall be unlawful for any such receiving or delivering common car-

rier to provide by rule, contract, regulation, or otherwise a shorter period for the filing of claims than nine months, and for the institution of suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice . . . .

Although the Carmack Amendment does not contain any language dealing with burdens of proof, the Amendment must be read in conjunction with certain common-law rules which it has been held to have codified. *Missouri Pacific R.R. v. Elmore & Stahl*, 377 U.S. 134, 137, 84 S.Ct. 1142, 1144, 12 L.Ed.2d 194, 197 (1964). As the Court stated:

> the statute codifies the common-law rule that a carrier, though not an absolute insurer, is liable for damages to goods transported by it unless it can show that the damage was caused by "(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods."

*Id.*, *quoting Bills of Lading*, 52 ICC 671, 679. The Court then set forth the well-established scenario of the typical shipper versus carrier suit for damage to the transported cargo:

> [I]n an action to recover from a carrier for damage to a shipment, the shipper establishes his prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of damages. Thereupon, the burden of proof is upon the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability.

*Id.*, 377 U.S. at 138, 84 S.Ct. at 1145, 12 L.Ed.2d at 198 (citations omitted).

■ There does not appear to be any dispute between the parties that the Carmack Amendment, together with its common-law roots, applies in the case of shipper versus carrier for damages to the shipped cargo. Rather, the issue here is whether the Carmack Amendment scenario outlined above applies to the situation of a carrier suing a shipper for damages suffered by the carrier.[1]

This question is one of first impression in this circuit. Furthermore, notwithstanding the Government's contention to the contrary, Southern Pacific contends that the issue has never been directly decided by any court.[2] To resolve this question, the pur-

---

1. As pointed out previously, in the instant case there exists also a counterclaim by the United States against Southern Pacific for damage to the shipped cargo and the boxcars. The applicability of the Carmack Amendment to this claim is not at issue at the present time. The effect of the presence of this counterclaim on the court's determination as to whether the Carmack Amendment applies to Southern Pacific's claim against the United States will be discussed later in this opinion.

 For purposes of this opinion, the term "shipper—claim" will refer to a claim by the holder of a bill of lading against an initial or delivering carrier for damages sustained during transportation of cargo in interstate commerce. The term "carrier—claim" will be used to identify a claim by a carrier against a shipper for damages sustained by the carrier during an interstate shipment of the shipper's cargo.

2. The case of *Fulton v. Chicago, R.I. & P.R.R.*, 481 F.2d 326 (8th Cir. 1973), should be briefly mentioned. In that case, one of the two railroad carriers, sued for damages to transported cargo, brought a counterclaim for its own dam-

ages against the shipper-plaintiff. On appeal from an adverse ruling on its counterclaim, the carrier contended that the court in its instructions erred in placing upon it the burden of proving itself free of contributory negligence, rather than placing the burden of proving contributory negligence on the shipper. The court rejected the carrier's argument on appeal, not on the merits, but rather on the ground that the carrier's failure to object in a timely fashion precluded the carrier from raising the issue on appeal, citing F.R.C.P., Rule 51. Indeed, the court's language indicates a recognition by the court of the validity of the merits of the carrier's contention:

> However, *regardless of the substantive merits of this contention*, Rock Island failed to object after the charge was delivered to this particular instruction and it is therefore precluded from raising this issue on appeal.

> . . . . .

> Accordingly, we hold that compliance with Rule 51 is not afforded merely by filing before the charge *an accurate requested in-*

poses behind the enactment of the Carmack Amendment and the rationale for the existence of its accompanying common-law gloss must be examined.

The legislative history of the Carmack Amendment provides very little guidance in its interpretation.[3] The Amendment, however, has been the subject of numerous judicial opinions. It has been held to have created no new substantive rights, but instead, a new remedy for shippers against carriers. *J & H Flyer Inc. v. Penn. R.R.*, 316 F.2d 203, 205 (2d Cir. 1963); *Strachman v. Palmer*, 177 F.2d 427, 430 (1st Cir. 1949). The Supreme Court has held that there are four "significant and dominating" features of the Carmack Amendment:

First. It affirmatively requires the initial carrier to issue "a receipt or bill of lading therefor," when it receives "property for transportation from a point in one state to a point in another."

Second. Such initial carrier is made "liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it."

Third. It is also made liable for any loss, damage, or injury to such property caused by "any common carrier, railroad, or transportation company to which such property may be delivered, or over whose line or lines such property may pass."

Fourth. It affirmatively declares that "no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed."

*Adams Express Co. v. Croninger*, 226 U.S. 491, 504, 33 S.Ct. 148, 151, 57 L.Ed. 314, 319 (1913).

Prior to the enactment of the Carmack Amendment, the rule of carrier's liability for an interstate shipment of cargo was subject to varied and unpredictable treatment between federal and state courts and between courts of different states. *Id.* 226 U.S. at 502–05, 33 S.Ct. at 150–51, 57 L.Ed. at 319–20. Passage of the Carmack Amendment assured uniformity of treatment on this issue. Furthermore, prior to the enactment of the Amendment, the practice had developed whereby receiving carriers refused to agree to transport the cargo beyond their own lines. Hence, the shipper had to make separate arrangements with each receiving carrier along an interstate route. The result was that the shipper might have to sue successively each of the various carriers involved until he found the one on whose line the damage occurred. Consequently, the shipper was often forced into an unfavorable settlement. *Atlantic C. L. R. R. v. Riverside Mills*, 219 U.S. 186, 197–99, 31 S.Ct. 164, 166–67, 55 L.Ed. 167, 179–80 (1911). The Carmack Amendment remedied this problem by allowing a shipper to recover from the initial or delivering carrier for all damage to the cargo regardless of whether the damage occurred on that carrier's line, or another carrier's line,

---

*struction*, but requires that there appear somewhere in the record an objection specifically delineating the objection and the grounds therefor [citation]. (emphasis added)

*Id.* at 338, 339. In view of the court's disposition of the carrier's contention, however, these evaluative comments by the court must be considered to be dicta.

3. This provision of the Interstate Commerce Act, 49 U.S.C. § 20(11), was initially submitted by Senator Carmack on February 2, 1906 as an amendment to the so-called Hepburn Act. Cong. Rec. 59th Cong., 1st Sess. 1922 (Feb. 2, 1906). The Hepburn Act, also known as the Railway Rate Bill, was the congressional response to President Theodore Roosevelt's plea for

some scheme to secure to·the agents of the Government such supervision and regulation of the rates charged by the railroads of the country engaged in interstate traffic as shall summarily and effectively prevent the imposition of unjust or unreasonable rates.

Sen.Rep. No. 1242, 59th Cong., 1st Sess. 2 (Mar. 15, 1906).

The Carmack Amendment was clearly not the focal provision of the Hepburn Act which primarily addressed rate setting and regulating issues. No substantive discussion of the Carmack Amendment appears to have occurred on the floor of either house. In addition, no committee reports were found by either party, or this court, which shed any helpful light on the intended scope of the Amendment. The numerous subsequent amendments to the Carmack Amendment are of no help in deciding the instant issue.

during its interstate journey. The Amendment also invalidated any contract provision which would exempt such carriers from liability for damage to cargo occurring anywhere on the cargo's journey. The ultimate allocation of the amounts paid by the sued carrier for the damage to the cargo was left to be worked out between the carriers themselves.[4] *Id.* 219 U.S. at 202, 31 S.Ct. at 168, 55 L.Ed. at 181.

■ The rationale for the imposition of the common-law burden of proof on carriers in a shipper-claim situation is multifaceted. The Supreme Court has stated:

The general rule of carrier liability is based upon the sound premise that the carrier has peculiarly within its knowledge "[a]ll the facts and circumstances upon which [it] may rely to relieve [it] of [its] duty . . . . In consequence, the law casts upon [it] the burden of the loss which [it] cannot explain or, explaining, bring within the exceptional case in which [it] is relieved from liability."

*Missouri Pacific R. R. v. Elmore & Stahl, supra* 377 U.S. at 143, 84 S.Ct. at 1148, 12 L.Ed.2d at 201, *quoting Schnell v. The Vallescura,* 293 U.S. 296, 303–305, 55 S.Ct. 194, 195–196, 79 L.Ed. 373, 377 (1934). A number of judicial decisions demonstrate that the carrier's liability is based on the bailor-bailee relationship existing between the shipper and carrier with regards to the

shipped goods. One notable example is the decision in *Schnell v. The Vallescura,* which is the original source of the language from *Missouri Pacific* cited above. The language from *Schnell,* uninterrupted by ellipses, reads:

The reason for the rule is apparent. He is a bailee entrusted with the shipper's goods, with respect to the care and safe delivery of which the law imposes upon him an extraordinary duty. Discharge of the duty is peculiarly within his control. All the facts and circumstances upon which he may rely to relieve him of that duty are peculiarly within his knowledge and usually unknown to the shipper. In consequence, the law casts upon him the burden of the loss which he cannot explain or, explaining, bring within the exceptional case in which he is relieved from liability.

*Schnell v. The Vallescura, supra,* 29? U.S. at 303, 55 S.Ct. at 196, 79 L.Ed. at 377. See also 14 Am.Jur.2d § 508. Furthermore, many cases have equated the common carrier's role with respect to transported cargo as that of an "insurer."[5] See, e. g., *Chicago & E. I. R. R. v. Collins Produce,* 249 U.S. 186, 192, 39 S.Ct. 189, 190, 63 L.Ed. 552, 555 (1918). This obligation was justified in part by a desire to prevent collusion between dishonest carriers or their servants and thieves or others to the prejudice of the shipper.[6] *Id.* In addition, the carrier's obli-

---

4. 49 U.S.C. § 20(12) provides:

 *Recovery by initial or delivering carrier from connecting carrier.* The common carrier, railroad, or transportation company issuing such receipt or bill of lading, or delivering such property so received and transported, shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained, the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof, and the amount of any expense reasonably incurred by it in defending any action at law brought by the owners of such property.

5. The common carrier is not an *absolute* insurer, however. *Missouri Pacific R. R. v. Elmore & Stahl, supra,* 377 U.S. at 136, 84 S.Ct. at 1143, 12 L.Ed.2d at 197.

6. The Kentucky Court of Appeals in *Louisville & N. R. R. v. Taylor,* 181 Ky. 794, 205 S.W. 934, 935 (1918), articulated the reasons for the imposition of the burden on the carrier as follows:

 "The public character of the carrier's duties; the inequality in the footing of the carrier and the shipper; the absolute possession and control of the property by the carrier while in course of shipment, and the entire separation of the shipper from his property while in course of transportation and his lack of opportunity to protect it by any efforts of his own; the opportunity of the carrier for embezzlement and for fraudulent collusion with others; and the ordinarily exclusive possession by the carrier of the means of evidence, and the difficulty, if not impossibility, of proving the fraud or negligence by which the goods were lost."

 *Id., quoting* 10 Corpus Juris 110.

gation to transport and to deliver goods entrusted to its care is so exceptional in character that the relationship of the carrier to the shipper has been characterized in many respects as being that of a fiduciary. *Id.*

 As demonstrated by the foregoing discussion, the rationale behind passage of the Carmack Amendment provides no indication whatsoever that the Amendment was intended to apply to carrier-claims. Rather, the clear intent of the Amendment, as shown by its terms, was to facilitate shippers' recoveries against carriers for damage to transported cargo. The United States argues, however, that the terms of the Carmack Amendment have been interpreted with sufficient broadness by the courts to include within their scope Southern Pacific's carrier-claim. The United States focuses on two provisions of the Carmack Amendment describing the type of damages for which the carrier is liable:

Any common carrier . . . receiving property for transportation . . . shall issue a . . . bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it . . . . .

[A]ny common carrier . . . receiving property for transportation . . . or any common carrier delivering said property so received and transported shall be liable to the lawful holder of said . . . bill of lading . . . for the full actual loss, damage, or injury to such property caused by it . . . .

The United States puts particular emphasis on the words "any loss" and "*full* actual loss" contending that these words are broad enough to include the *carrier's* claim for *its own* damages. This contention is without merit. The cases cited by the United States in support of this argument are inapposite. The United States first cites the case of *New York P. & N. R. R. v. Peninsula Produce Exchange,* 240 U.S. 34, 36 S.Ct. 230, 60 L.Ed. 511 (1916). In *Peninsula Produce,* a shipper of strawberries brought suit against the initial carrier under the Carmack

Amendment for damages it suffered due to a delay in the delivery of the strawberries. The initial carrier argued that the Carmack Amendment does not impose liability upon it for mere delay, occurring on a connecting carrier's lines in the absence of physical damage to the property. Therefore, the carrier concluded, it, as initial carrier, was not liable for the shipper's damages, and the shipper must sue the particular carrier whose negligence caused the delay. *Id.* 240 U.S. at 3637, 36 S.Ct. at 231, 60 L.Ed. at 514–15. The Supreme Court rejected the carrier's narrow interpretation of the type of damages encompassed within the Carmack Amendment stating:

We do not think that the language of the amendment has the inadequacy attributed to it. The words "any loss, damage, or injury to such property," caused by the initial carrier or by any connecting carrier, are comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination. It is not necessary, nor is it natural, in view of the general purpose of the statute, to take the words "to the property" as limiting the word "damage" as well as the word "injury," and thus as rendering the former wholly superfluous.

*Id.* 240 U.S. at 38, 36 S.Ct. at 232, 60 L.Ed. at 515. The United States' argument that this language should be read so as to include within the scope of the Carmack Amendment a carrier's claim for damages must be rejected. The Court in *Peninsula Produce* was not dealing with the claim of a carrier for its own damages, but rather with a shipper's claim for damage—a traditional Carmack Amendment situation. The Court's conclusion is entirely consistent with the purpose of the Carmack Amendment which is to facilitate the *shipper's* recovery for *full* damages it suffered as a result of the common carrier's transportation of its cargo. There is no indication in that case that the Court intended to expand its holding outside the realm of a shipper-

claim situation, nor is such expansion warranted.[7]

The United States next cites *Hubbard v. Allied Van Lines, Inc.,* 540 F.2d 1224 (4th Cir. 1976). In *Hubbard* the shippers of personal household furniture sued the interstate carrier for breach of its duty of nondiscrimination under the Interstate Commerce Act. The issue was whether the shippers could recover mental distress and punitive damages under the Carmack Amendment. In holding that such damages were within the purview of the Amendment, the court referred to the *Peninsula Produce* case and stated:

> the Court construed the phrase "to such property" as limiting only the word "injury"; thus, the words "loss" and "damage" are left unlimited, and the phrase "any loss, damage, or injury to such property" is "comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination." [citation]. The statute thus comprehends damages personal to the shipper, such as damages for delay in shipment. [citation].

*Id.* at 1227. Again, as in the *Peninsula Produce* case, the court's holding was rendered in the context of a traditional Carmack Amendment situation in which the shipper was seeking to recover the full measure of the damage he had suffered. The holding is not properly extended to the instant case.

Finally on this point, the United States cites *American Synthetic Rubber Corp. v. Louisville & Nashville R. R.,* 422 F.2d 462 (6th Cir. 1970). That case involved a claim by a consignee against a carrier for misdelivery of certain chemicals. Apparently, the chemicals set out in the bill of lading were belatedly delivered to the consignee who suffered no damage by reason of the delay. Rather, the damage occurred when plaintiff's employees unloaded a shipment of misdelivered chemicals, thinking them to be the ones ordered, and improperly mixed them unknowingly with other chemicals. The court held that the Carmack Amendment was broad enough to include the consignee's "misdelivery damages." The holding in *American Synthetic Rubber* is again distinguishable from the present case since the court there was not addressing the issue of *carrier* damages.

To adopt the United States' position, that the Carmack Amendment applies to a carrier's claim for its own damages, would be to ignore and misconstrue many provisions of the Amendment. For example, whenever the Amendment refers to the carrier being "liable" for damages, it is stated with reference to liability *to the lawful holder of the bill of lading.* It does not make sense that Southern Pacific would be liable to the United States for damages suffered by Southern Pacific. Yet this is the necessary result of the United States' interpretation of the Amendment. Furthermore, one of the "provided further" phrases in the Amendment does not make any sense in the context of a carrier suing a shipper for carrier damages.[8]

Despite this total absence of support for the position of the United States in the terms and purpose of the Carmack Amendment, the United States argues that the rationale for the common-law roots of the Carmack Amendment burden of proof in the shipper-claim situation applies with equal force to the carrier-claim situation here, and hence, that this court should impose the Carmack Amendment burden of proof on Southern Pacific. The arguments of the United States on this point are not persuasive. First, the United States urges

---

7. A similar holding by the Court in *Southeastern Express Co. v. Pastime Amusement Company,* 299 U.S. 28, 57 S.Ct. 73, 81 L.Ed. 20 (1936), is distinguishable for the same reasons.

8. *Provided further,* That it shall be unlawful for any such receiving or delivering common carrier to provide by rule, contract, regulation, or otherwise a shorter period for the filing of claims than nine months, and for the institution of suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice . . . .

that the primary justification for imposing this burden of proof on a carrier is its greater (if not exclusive) knowledge as to what transpired during transportation of the cargo. Hence, where the carrier's damages are suffered as a result of the transportation of the shipper's cargo, the carrier should bear the same burden of disproving its own negligence since it has the same superior knowledge in this situation as in the shipper-claim situation. In its second argument, which seems to be a corollary to the first, the United States claims that unquestionably the Carmack Amendment with its burden of proof applies to the counterclaim of the United States against Southern Pacific for the loss of its bombs and boxcars. Thus, argues the United States, since the *cause* of the damage to the bombs is precisely the same as the cause of the damage to Southern Pacific's trainyard, the same justifications exist for imposition of the Carmack Amendment burden in Southern Pacific's carrier-claim.

There are a number of fallacies in the United States' arguments. Initially, it should be pointed out that the statement of the common-law rule is articulated in terms of a shipper-claim, and not in terms of a carrier-claim; as shown, for example, by the statement of the common-law carrier burden of proof rule in *Missouri Pacific R. R. v. Elmore & Stahl, supra,* quoted at page 934 of this opinion. Furthermore, many justifications for the imposition of the common-law burden on the carrier dissolve when the context is carrier versus shipper for carrier damages rather than shipper versus carrier for shipper damages. First, the presumption of carrier negligence that arises in a shipper-claim situation when a shipper shows delivery of the goods in good condition and their arrival in damaged condition, does not apply to the situation in which the *carrier's* property is involved. Second, the carrier's "bailee duty" to the cargo does not exist when the focus is on the carrier's own property. Third, the quasifiduciary responsibility that a carrier has to a shipper with regard to shipped goods does not exist as to the carrier's own property. Nor is the carrier an "insurer" of its own property as it is for the shipper's property. Finally, the possibility of collusion between carriers and thieves to steal the cargo, which justifies imposing the burden of proof on the carrier in the shipper-claim situation, is not present in the carrier-claim situation.

■ In sum, when a carrier sues a shipper for damages to carrier property, most of the unique features of the shipper-carrier relationship are absent. Conceivably, the carrier in the instant case may have superior knowledge as to what occurred during the transportation of the bombs and as to what degree it was negligent in its transportation of the cargo. However, the mere possibility of superior plaintiff-knowledge of any contributory negligence is insufficient justification to shift the burden of proof to Southern Pacific on the issue of contributory negligence as to its own damages. There are innumerable analogous situations in which the plaintiff in a lawsuit, may have superior or even exclusive knowledge regarding its own possible contributory negligence, yet the burden of proof on the issue still remains on the defendant. Two examples in the tort context should suffice to illustrate the point. A hotel guest slips and falls on an allegedly negligently maintained floor, when no witnesses were present. In the subsequent lawsuit brought by the guest against the hotel, certainly the plaintiff would have superior, if not exclusive knowledge of her negligence, if any, contributing to the fall. Yet, in such a situation the burden of proof remains on the defendant to show the plaintiff's contributory negligence. Or as another example, a lone driver of a car rounding a corner skids off the road injuring himself. In the driver's subsequent suit against the state for negligent design and maintenance of the road, certainly the driver would have superior knowledge as to his own possible negligence, yet the burden would still remain on the state to prove any contributory negligence.

■ The fact that the cause of Southern Pacific's damages and the damage to the

cargo may be the same is also not sufficient to shift the burden of proof on the issue of contributory negligence to Southern Pacific. Although the cause might be the same, the justifications, as pointed out previously, for the carrier's heavy burden of proof in the shipper-claim situation are not present in a carrier-claim situation. Moreover, the fact that Southern Pacific may have to sustain the Carmack Amendment burden of proof as to the United States' counterclaim does not compel the result that the same burden should be shouldered with respect to Southern Pacific's claim for its own damages. As discussed earlier, the public policy reasons for imposing on the carrier the ultimate cost for the loss, should the burden of proof as to the negligence issues not be sustained, is sound when the damages involved are those of the shipper. However, these same public policy considerations are not present in the carrier-claim situation, and do not support the result that the carrier in such a situation should bear its own damages either if it fails to show its lack of contributory negligence or if the evidence on the issue is equivocal.

The United States next cites in support of its argument, various provisions of the Interstate Commerce Act as well as case law which it contends indicate that Southern Pacific has an affirmative statutory duty to provide safe and adequate car service, and that this duty is primary.[9] The United States also argues that an implied warranty of workmanlike service existed between Southern Pacific and the United States.[10] Thus, concludes the United States, the burden of proof on the issue of

contributory negligence should rest on Southern Pacific. This conclusion simply does not follow. There are two very distinct issues which the United States improperly lumps together in these last two arguments. One issue is the *effect* of a finding of contributory negligence on Southern Pacific's right to recover. The second issue is who has the *burden of proof* on the issue of contributory negligence. It is only the second issue which this court currently faces. The fact that Southern Pacific may have the primary duty to transport cargo safely, and that there may exist an implied warranty of workmanlike service, does not speak to the issue of burden of proof. Therefore, these arguments by the Government are not persuasive.

Finally, the United States argues that allowing Southern Pacific to avoid the Carmack Amendment burden of proof would run contrary to the concepts of rate justification. In this argument, the United States contends that the risk of loss and the hazards involved are factors considered when the carriers' rates are set. Hence, the United States concludes:

> Since Southern Pacific is allowed to charge rates commensurate with its risk, including the risk of its inability to recover its own damages where it cannot prove the absence of its negligence, it must be required to meet the Carmack Amendment burden of proof to recover such damages from the United States. Failure to apply the Carmack burden would, in effect, grant Southern Pacific a double recovery by allowing it to charge high

---

**9.** The United States cites, *inter alia*, 49 U.S.C. § 1(11) and § 8. Section 1(11) provides:

> It shall be the duty of every carrier by railroad subject to this chapter to furnish safe and adequate car service and to establish, observe, and enforce just and reasonable rules, regulations, and practices with respect to car service; and every unjust and unreasonable rule, regulation, and practice with respect to car service is prohibited and declared to be unlawful.

Section 8 provides:

> In case any common carrier subject to the provisions of this chapter shall do, cause to be done, or permit to be done any act, mat-

ter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter . . . .

The case of *United States v. Savage Truck Lines*, 209 F.2d 442 (4th Cir. 1953), *cert. denied*, 347 U.S. 952, 74 S.Ct. 677, 98 L.Ed. 1098 (1954), cited by the United States, will be discussed later in this opinion.

**10.** See *Ryan Co. v. Pan-Atlantic Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1955).

freight rates in anticipation of a risk it would not in fact bear.

United States opening brief, at page 25.

The problem with this argument is that the United States has provided this court with no showing, aside from its mere allegations, either that Southern Pacific charges higher rates due to the imposition of the Carmack burden of proof when it seeks to recover for its *own* damages or that such a factor is even considered when rates are set. Accordingly, the United States' contention on this point must be rejected.

Despite all the foregoing reasons which indicate that the Carmack Amendment should not apply to a carrier-claim, the United States urges that five federal cases from other circuits have applied the Carmack Amendment burden of proof to a carrier's claim. See *United States v. Savage Truck Lines, supra; American Hoist & Derrick Co. v. Chicago, M., St.P. & P.R.R.*, 414 F.2d 68 (6th Cir. 1969); *Ebasco Services Inc. v. P.I.E. Express Co.*, 398 F.Supp. 565 (S.D.N.Y.1975); *B.C. Truck Lines Inc. v. Pilot Freight Carriers*, 225 F.Supp. 1 (N.D. Ga.1963); *Union Pacific R. R. v. United States*, 292 F.2d 521, 154 Ct.Cl. 427 (1961). The court has carefully examined these cases but is unable to find in them persuasive authority for the imposition of the Carmack Amendment burden on Southern Pacific's carrier-claim in the instant case.

The United States places heavy reliance on the case of *United States v. Savage Truck Lines, supra*. In *Savage*, the common carrier (Savage) was under contract with the United States (shipper) to transport by truck certain airplane engines encased in cylindrical containers. The cylinders were loaded onto the Savage truck improperly by Government workers and during transit one of the cylinders fell on an oncoming truck killing its driver. The executrix of the driver, and the owner of the truck he was driving, brought separate suits against Savage and the United States. The United States and Savage brought claims against each other, seeking indemnity and recovery for the damages sustained to the engine and truck respectively. Findings were made at the trial court that the United States had been negligent in failing to fasten the cylinders securely and that Savage was negligent in accepting the cargo and operating its truck as it did with knowledge of the condition. Judgments were entered against Savage and the United States in favor of the two primary plaintiffs, and the trial judge denied both the United States' claim for damages against Savage and Savage's claim against the United States for damages, as well as both defendants' claims for indemnification. On appeal, neither the United States nor Savage challenged the awards against them in favor of the primary plaintiffs, but both challenged the judge's determination of the claims between them as well as the judge's determination on the question of indemnity. The Fourth Circuit reversed the trial judge in part, holding that, despite the negligence of the United States, it was entitled to recover damages to its engine, that Savage was *not* entitled to recover its damages, and, finally, that the United States was entitled to indemnification from Savage.

The most significant aspect of the *Savage* opinion, in the present context, is the issue with which it did *not* deal. Nowhere in the opinion is the issue of burden of proof discussed. Rather, the focus of the court was on what *effect* a finding of shipper and/or carrier negligence has on a recovery for damages and indemnification by either of them. The essence of the reasoning for the court's ultimate conclusions is found in the following language:

> The primary duty as to the safe loading of property is therefore upon the carrier. When the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper.

*Id.*, 209 F.2d at 445. The United States' contention that the *Savage* court "*implicitly*

holds" that the carrier has the burden of proving the absence of his own negligence in a carrier-claim situation is unsound. There cannot be a holding, implicit or otherwise, by a court on a question it does not face. Moreover, not even an "implicit *recognition*" of any such burden in the carrier-claim context can be gleaned from the *Savage* opinion as is urged by the United States.[11]

The United States next cites *Ebasco Services Inc. v. P.I.E. Express Co., supra.* That case did not involve a carrier-claim, but rather a shipper-claim for damage to a pump motor sustained in transit when the top of the motor struck a bridge as the transporting truck drove under it. The *Ebasco* decision is apparently cited primarily because of its reliance on the *Savage* case. The *Ebasco* holding adds nothing to the Government's argument since (1) it did not deal with a carrier-claim, and (2) the *Savage* case, as discussed previously, does not furnish support for the United States' burden of proof contentions.

■ The next case cited by the United States as having applied the Carmack Amendment to a carrier-claim is *American Hoist & Derrick Co. v. Chicago, M., St.P. & P.R.R., supra.* In *American Hoist*, after a crane was destroyed in a train derailment,

the manufacturer and seller of the crane (American Hoist) brought suit against the buyer of the crane (Price) on a contract of sale. Price brought in the railroad, which had transported the crane, on a third party complaint as the responsible party, whereupon the railroad counterclaimed against American Hoist for the damage sustained by the railroad as a result of the derailment. The parties stipulated that the case would be tried on the issues joined between the railroad and American Hoist on the counterclaim. The parties further stipulated that, if the decision were against the railroad, judgment would be entered for American Hoist in the amount of its claim in its action against Price, which was also the amount of Price's claim against the railroad. Pursuant to these stipulations, the case was tried with the railroad in the posture of a plaintiff. The jury returned a verdict in favor of American Hoist against the railroad and against the railroad on its counterclaim. The railroad appealed to the Sixth Circuit, in pertinent part, on the ground that an addendum to the instruction on contributory negligence was improper. The addendum read:

"Remember on telling you the five questions that you would look into in this case, when I said what do you say ladies

11. The United States has two arguments in this regard. First, it points to the fact that, after the court referred to the Carmack Amendment, it string-cited the case of *Chicago & Eastern Illinois R.R. v. Collins Produce Co.*, 249 U.S. 186, 192, 39 S.Ct. 189, 190, 63 L.Ed. 552 (1919). On the page cited in the *Collins Produce* case is the following quote:

The common-law principle making the common carrier an insurer is justified by the purpose to prevent negligence or collusion between dishonest carriers or their servants and thieves or others, to the prejudice of the shipper, who is, of necessity, so remote from his property, when in transit, that proof of such collusion or negligence, when existing, would be difficult if not impossible.

The United States contends that the *Savage* court's citation to the Carmack Amendment and to the *Collins Produce* case indicates an implicit recognition by the court that the Carmack Amendment applies to carrier-claims. This contention is untenable, since the United States' conclusion regarding any "implication" simply does not follow logically from the

court's citation to the Carmack Amendment and the *Collins Produce* case.

The second argument by the United States is derived from the portion of the *Savage* decision quoted earlier in this opinion. The United States contends that, since the carrier can only recover for damages caused by defective loading if the defect is "latent" and not "patent," the carrier has the burden of proof on the issue, and that this burden is tantamount to proof by the carrier that it was not negligent in failing to discover the defect. There are two problems with this argument. First, there was no discussion in the *Savage* case that the carrier has the burden of proof on the issue of whether the defect in loading was latent or patent. Second, even if the carrier did have the burden of showing the defect in loading to be latent, and even if this were tantamount to a showing of no carrier negligence in the failure to discover defects in loading, this would still not sustain the United States' position here, since the failure to inspect the loaded bombcars properly is only one of many alleged contributorily negligent acts on the part of Southern Pacific.

and gentlemen after a fair and impartial judgment, I wanted to add this particular question which really is the question that you must decide. Did American Hoist cause this derailment? If it did, your verdict is for the Railroad. Otherwise, it is for American Hoist."

*Id.* at 71 (quoting the trial judge's charge to the jury). The Sixth Circuit articulated the issue on appeal as follows: "The railroad's argument is that if the jury found both negligence and contributory negligence, American Hoist should not have recovered damages." *Id.* The court in *American Hoist* rejected the railroad's argument in light of the stipulated basis of recovery by American Hoist through Price against the railroad. The court's result was sound since under the Carmack Amendment in a shipper-claim situation, the shipper can recover its damages despite a finding of shipper negligence. See *Missouri Pacific R.R. v. Elmore & Stahl, supra* 377 U.S. at 138, 84 S.Ct. at 1144, 12 L.Ed.2d at 198. Because of the stipulation in *American Hoist*, the railroad had to shoulder the traditional Carmack Amendment burden of proof in order to avoid liability to Price and American Hoist. The issue in that case, however, was *not* who had the burden of proof on the question of contributory negligence, but rather, the *effect* of a finding of negligence on the shipper (American Hoist's) right to recover. Hence, the holding is inapplicable to the case at bar. Nevertheless, the United States puts great emphasis on the following language in the opinion:

The logic behind the stipulation is clear in view of the railroad's liability to Price as a common carrier.

In Price's action against the railroad a prima facie case would be made out by showing the delivery of the crane in apparent good order and the fact and amount of damage. Under the Carmack amendment, 49 U.S.C. § 20(11) and (12), the carrier then would have the burden of proving both that the damage to the crane resulted from the allegedly defective wheel and that it was free from negligence in order to avoid liability to Price. *Missouri Pacific Railroad Co. v.*

*Elmore & Stahl,* 377 U.S. 134, 138, 84 S.Ct. 1142, 12 L.Ed.2d 194; *Super Service Motor Freight Co., Inc. v. United States,* 350 F.2d 541 (6th Cir.). What the railroad had to establish to avoid liability to Price was that the crane was the *sole* cause of its own destruction. In order to recover for its own damages the railroad on the counterclaim had also to prove that American Hoist caused the accident. *Thus what the railroad had to prove to recover its damages was the same thing that it had to prove to avoid liability to Price, viz: that American Hoist caused the accident.* Obviously had Price recovered from the railroad, American Hoist would have recovered from Price.

It follows that, contrary to the railroad's argument, if the jury found for American Hoist on the counterclaim only because of a finding of contributory negligence on the part of the railroad, the railroad would not be relieved of liability for the destruction of the crane. Only if the jury found that American Hoist was the sole cause of the derailment would the railroad be entitled to its damages and only if the jury so found would the railroad have avoided liability for the destruction of the crane.

▮ we hold that the addendum to the instructions carried out the purpose of the stipulation and was correct.

*Id.* at 72 (emphasis added). The language insofar as it refers to what the railroad had "to prove" to recover its damages from American Hoist is dicta since that issue was not before the court on appeal. The court may have been correct in its final statements regarding the *effect* of a finding of contributory negligence, but its prior use of the word "prove" was imprecise. In any event, the Sixth Circuit's opinion is not controlling upon this court, and the absence of any support for the court's dicta precludes this court from giving any persuasive force to its language.

Next, the United States cites *B.C. Truck Lines Inc. v. Filot Freight Carriers, supra.* In that case, a connecting and would-be delivering carrier (B.C.) sued the manufacturer-shipper of 54 drums of sodium perox-

944

ide (duPont) for damage, *inter alia*, to B.C.'s terminal facilities and trucking equipment caused by the drum's catching on fire. Also named as a defendant in the suit was the initial carrier (Pilot) who had delivered the sodium peroxide to B.C. for carriage to its point of destination. Prior to the suit, Pilot, as initial carrier, paid the cargo loss amount to duPont, who was the assignee of the consignee's claim for the loss, and then counterclaimed against B.C. for this amount. The district court, after making its findings of fact, set out 16 conclusions of law. The United States focuses on conclusion 13 which states:

13. This Court finds that the plaintiff B.C. has never carried its original burden of going forward to prove the absence of any negligence on its part, which it is obliged by law to do, shipper duPont having proved delivery of the shipment in actual good order. *Thompson v. James G. McCarrick Co.*, 205 F.2d 897 (C.A.5, 1953).

*Id.* at 11. The United States argues that this shows that the court applied the Carmack Amendment burden of proof in a carrier-claim situation. Whether this is, in fact, the court's holding is not entirely clear. First, the court uses as authority for its finding the case of *Thompson v. James G. McCarrick Co.*, which is a shipper-claim case. Second, it is not clear from the court's opinion whether Pilot, in its counterclaim, was given the benefit of the consignee's rights against B.C. which would have

made the counterclaim into a Carmack Amendment action; or, whether Pilot merely was given the rights of an initial carrier suing to recover amounts paid out due to the negligence of the connecting carrier, in which case no Carmack Amendment action would exist. See note 4, *supra*. If the counterclaim was in the nature of a Carmack Amendment action, the court could well have been referring to the carrier's burden in such a situation in its Conclusion 13; such a finding would then not support the Government's position that the court applied the Carmack Amendment burden to a carrier-claim.[12] If, however, Pilot, in its counterclaim, did not "stand in the shoes" of the consignee and, hence, had no Carmack Amendment action, the court could only have been referring to a carrier-claim, and consequently, the case would stand for the proposition urged by the Government. Further uncertainty is created by Conclusion 12, in which the court was clearly discussing the burden of proof problem in connection with B.C.'s carrier-claim, yet the Carmack Amendment burden of proof discussion was not contained in Conclusion 12 but rather in Conclusion 13.[13] In any event, this court does not believe that the *B.C. Truck Lines Inc.* case furnishes any persuasive authority for this court to impose the Carmack Amendment burden of proof on Southern Pacific's carrier-claim here.

The final case cited by the United States is *Union Pacific R.R. v. United States*, 292

12. Note, however, that the court in Conclusion 13 did not refer to "*Pilot* having proved delivery of the shipment by du Pont in actual good order," rather, the court stated "*shipper du Pont* having proved delivery of the shipment in actual good order." The United States contends that this shows that the court was referring to B.C.'s carrier-claim against du Pont, since du Pont did not have any Carmack Amendment claim against B.C. It is true that this language by the court creates an ambiguity if the court were in fact referring to Pilot's Carmack Amendment claim against B.C. However, in that case, one of the allegations of negligence against du Pont was that the cargo was not in good order when shipped and therefore, du Pont would have put on evidence to prove that the shipment was in fact in actual good order when delivered. It is understandable then that the court may not have referred

to *Pilot's* proof of the fact of good delivery condition, but rather du Pont's proof of the fact, even though proof of the fact was a part of Pilot's Carmack Amendment claim against B.C. if it existed.

13. Conclusion 12 read as follows:

B.C. has failed to prove negligence or breach of warranty against the shipper du Pont or negligence against the other carrier Pilot, *and this is failure of proof as specified.* A carrier claiming damages from a shipper or other carrier for negligence or breach of warranty must, in order to prevail, prove the existence of the negligence specified or of the warranty and breach thereof specified [citation] and that such negligence or breach of warranty was the proximate cause of the injury suffered. [citation].

F.2d 521, 154 Ct.Cl. 427 (1961). That case, although involving a carrier-claim, is again distinguishable from the case at bar since the issue of burden of proof was not involved. Instead, the issue in that case was the effect of a finding of contributory negligence on plaintiff-carrier's right to recover for its damages and to receive indemnification.

■ Accordingly, for the reasons stated above, this court holds that the Carmack Amendment does not apply to Southern Pacific's carrier-claim against the United States, and therefore, does not mandate that Southern Pacific carry the burden of proving itself free of contributory negligence as a prerequisite to recovery of its damages. In light of this disposition, the court does not reach the issue raised by Southern Pacific at oral argument regarding the distinction between a shipper and a car owner defendant for purposes of determining whether the Carmack Amendment applies to a carrier-claim against such a defendant.

IT IS SO ORDERED.