**NORTH AMERICAN VAN LINES, INC.,**
Appellant,

v.

**Bernard HELLER et al., Appellees.**

No. 23477.

United States Court of Appeals
Fifth Circuit.

Jan. 13, 1967.

---

**630**

Pike Hall, Jr., Charles B. Peatross, and Wilkinson, Lewis, Woods & Carmody, Shreveport, La., for appellant.

Kenneth Rigby and Love, Rigby, Donovan, Dehan & Love, Shreveport, La., for Bernard Heller, defendant and counter-claimant-appellee.

Before TUTTLE, Chief Judge, and JONES and GEWIN, Circuit Judges.

TUTTLE, Chief Judge:

This appeal challenges the granting of a judgment for the value of household furnishings in favor of the appellee as one of the defendants in an interpleader action, following a decision by the trial court that the North American Van Lines, Inc., had converted the appellee's household furnishings by removing them and failing to heed his demand for their return. The furniture had been removed upon the request of the wife of the appellee, who was, at the time in question, living separately from him.

There is no serious issue as to the facts in the case. In January of 1962, Mr. Bernard Heller and his wife, who were living in a residential section of Shreveport, Louisiana, decided to separate. He went to live with his mother, and Mrs. Heller with the three minor children, retained their residence in the

family home on Symphony Lane. There was no agreement of separation, and no order of separation in effect at any of the times that are critical to this decision. In July of 1962, Mrs. Heller and the children left town ostensibly to visit her mother in Texas. While on this trip, she went, without the knowledge of Mr. Heller, to Reno, Nevada, to file a suit for divorce. On July 24th, while in Reno, Mrs. Heller called on the local representative of North American Van Lines, one N. Devine, and his wife, Mrs. W. E. Devine. In their presence, and on their letterheads, she wrote a letter addressed to North American Van Lines, A. D. Dunn, Transfer and Storage, appellant's representative, in Shreveport, Louisiana, directing that all of the furniture and personal belongings in the Symphony Lane residence be forwarded to Oakland, California and placed in storage there. This letter was enclosed in a communication written by the Devines, who repeated the request, and enclosed to Dunn in Shreveport a key to the house. The household goods were to be shipped C.O.D. in care of the Nevil Storage Company in Oakland, California, to be called for at Mrs. Heller's pleasure. The letter requested urgent and prompt shipment of the goods.

Upon receipt of this letter, Mr. Gilbert, the manager of Dunn Transfer in Shreveport, visited the house and made an estimate of the amount of goods to be shipped and, on or about July 27th, phoned the district dispatcher in Joplin, Missouri, requesting that a truck of sufficient size be dispatched to Shreveport. On August 2, 1962, the truck arrived in Shreveport. On August 3rd, all of the household contents were loaded into the truck after necessary packing had been completed. Everything was removed from the house except wall-to-wall carpets, in accordance with Mrs. Heller's instructions. On Friday, August 4th, a neighbor commented to Mr. Heller about the vacant appearance of his house, whereupon he went by and found the condition of the place. This was the first knowledge he had that any local mover had received any instructions from his wife or that anything had interrupted Mrs. Heller's tenancy at Symphony Lane. He customarily checked the house, every few days, while his wife was away and had been there three or four days earlier and had found everything in the usual condition including the presence of bicycles and other personal items in the carport.

When he found everything gone, shortly after noon on Friday, August 4th, he had every local transfer company called and ascertained in a couple of hours that Dunn Transfer had made the movement. Mr. Gilbert told Mr. Heller of the letter of authority from his wife, but Mr. Heller immediately protested the shipment, and inquired as to what representative of American Van he should get in touch with to get the furniture back. He was told to get in touch with a Mr. Helstrom, the claims agent of the company at the home office in Fort Wayne, Indiana. Mr. Gilbert, however, immediately called a Mr. Bradford, who was the district dispatcher of the appellant company, in Joplin, Missouri and told him of the call from Heller. Helstrom suggested to Heller that he should get in touch with Mr. Bradford, the dispatcher in Joplin. He immediately called Mr. Bradford, who indicated that he already knew about the situation, since he had heard from Gilbert. Heller testified that originally during this conversation, Mr. Bradford seemed cooperative and said that he had been in touch with the driver, who lived in Dallas, and that he would attempt to locate the driver in Dallas and try to delay the shipment. Heller thought that he should have a record of the protest and he sent a night letter to the company's main office at Fort Wayne, Indiana, repeating his protest.[1]

1. Night Letter addressed to North American Van Lines, Fort Wayne, Indiana:
"Confirming our telephone conversation today, am advised your truck transporting household furnishings and personal belongings removed from my residence at 237 Symphony Lane Shreveport to Oakland California on alleged

The records of the company show that the van left Dallas at eight P.M. on Friday, August 3rd. On Saturday morning, Mr. Heller again called Mr. Bradford, who said that he was sorry but that he could not or would not do anything about delaying the truck, without a court order. In the meantime, on the same Saturday morning, counsel for Mr. Heller sought to obtain a sequestration order in the Louisiana court, but this was denied because the goods had already left the state of Louisiana.

■ The van continued its course to Oakland, California where, based upon the information it had received from Mr. Heller, appellant ordered it held until further notice from the home office. Mrs. Heller made no demand for the goods and they remained in storage at a cost of $60.00 per month, until after the date of trial. So far as we are aware, the goods are still there. Mrs. Heller subsequently got her divorce in Nevada, and Mr. Heller subsequently got a separation judgment in the Louisiana courts. After considerable legal skirmishing, the appellants filed this interpleader action against Mr. and Mrs. Heller, and Heller filed a counter-claim seeking damages for the alleged conversion of his property. Mrs. Heller did not file any defensive pleadings, and a default judgment was taken against her by Heller and by North American so that it has been legally established that Heller was entitled to possession of the goods at the time they were taken by American Van Lines, so far as the status of the goods might otherwise have been affect-ed by the Louisiana community property laws.[2]

■ The fact is, as found by the trial court, that at the moment the American Van Lines took the household goods from the home of the Hellers in Shreveport, they took it without authority, for the wife had no right to authorize the taking. However, Mr. Heller's right of recovery here does not depend upon his establishing the original taking on the purported authorization of the wife as a conversion entitling him to damages for the value of the property. His contention is based upon the fact that a conversion occurred when, after appellant was notified that it had no right to take the property, it refused either to return it or to delay shipment at a place convenient for a later return pending the making of an investigation, *which would have demonstrated that the taking had been illegal and unwarranted* and for proceeding to run up approximately $2,000.00 in transportation costs by carrying it halfway across the continent and then demanding charges for bringing it back to Shreveport as a condition to surrendering it to the rightful owner.

■ We need not consider what would have been Mr. Heller's rights if American Van Lines, Inc., had held the goods in storage in Dallas, and, upon satisfying itself that Mrs. Heller had no right to authorize the removal, still demanded payment for transferring the goods back to Shreveport before surrendering them to the rightful owner. We have here, instead, the question of whether the trial court correctly determined that there was

authorization of Doris C. Heller be advised that this property belongs to me and she had no authority or legal capacity to order removal of same. I demand that the truck be stopped and the furnishings and other items be returned to Shreveport immediately have consulted with my attorney and am filing immediate court action against Doris Heller and your firm to compel return of property be advised that unless shipment stopped immediately that I will look to your company and your local representatives for damages."

2. For the proposition that, under Louisiana law, the wife is not competent to contract with reference to community property, except as agent of her husband. See Louisiana Civil Code, Art. 2404, which provides: "The husband is the head and master of the partnership of community of gains; he administers its effects, disposes of the revenues which they produce, and may alienate them by an onerous title, without the consent and permission of his wife. And see Azar v. Azar, 239 La. 941, 120 So.2d 485 at 487, and Mitchell v. Dixie Ice Co., 157 La. 383, 102 So. 497.

a conversion when the van lines utterly disregarded the notice of the true legal status of the matter and proceeded to deal with the goods in a manner that put it out of the power of the true owner to exercise dominion over them, without paying an amount equal to some one-fourth of the total value of the goods. The trial court placed its decision that this conduct amounted to a conversion of the goods largely on the principles which the court found implicit in the laws governing Interstate Commerce of the United States. The trial court said: "By 49 U.S.C. §§ 89 and 90 Congress intended to place upon a carrier in interstate commerce the duty to act with reasonable diligence to stop a shipment of goods when information as to the claim of a person lawfully entitled to the possession of the goods comes to the responsible agent of the carrier." To the appellants argument that under Section 99 it could not set up Heller's right to possession as a defense to a potential action by Mrs. Heller for delivery of the goods, the trial court called specific attention to Section 98 of Title 49, U.S.C.A., which provides as follows:

"Reasonable time for procedure allowed in case of adverse claim—

"If someone other than the consignee or the person in possession of the bill has a claim to the title or possession of the goods, and the carrier has information of such claim, the carrier shall be excused from liability for refusing to deliver the goods, either to the consignee or person in possession of the bill or the adverse claimant, until the carrier has had a reasonable time to ascertain the validity of the adverse claim or to bring legal proceedings to compel all claimants to interplead."

Here, the carrier, instead of holding the goods, or, if necessary, placing the goods in storage in Dallas, simply ignored the claim for the moment, at least to the extent of permitting it to proceed to Oakland, California, at a very substantial cost for shipment, and thus put it out of the power of the claimant, who has now been found to have had a valid claim, to recover his property without paying out very substantial costs incurred without his authorization. We agree, that, since there is nothing in the federal statutes that prohibit the interruption of a shipment of this kind for the purpose of ascertaining the validity of such a claim, and the delivery to such claimant in a proper cause the trial court properly held that the conduct of the appellant amounted to a conversion of the goods which gave rise to the right of the true owner to collect the value of the goods at that time. Importsales, Inc. v. Lindeman, 231 La. 663, 92 So.2d 574.

■ Appellant claims that the equities are with it, since it has kept the goods stored in a warehouse in Oakland, California, at a cost of $60.00 a month, for the intervening years, and that this has substantially consumed the value of the goods themselves. The simple answer to this is that the election to ignore the claim of the rightful owner, and ship the goods across the country was an election made by North American Van Lines, Inc., at its peril, once it had knowledge of facts, which, if pursued, would have led to absolute knowledge that its customer, Mrs. Heller, had no authority to order the goods removed in the first instance. Appellant, in its brief, relies heavily upon the language quoted from American Jurisprudence. It quotes: "In the absence, however, of actual knowledge, or of facts which should readily lead to actual knowledge to the contrary, a common carrier is bound to presume that a person presenting property for transportation is rightfully in possession thereof and authorized to contract for transportation, and is bound to receive it for shipment." 9 American Jurisprudence, Carriers, Section 306, p. 618.

■ It will be remembered that here it can not be disputed that the carrier had knowledge of "facts that should readily lead to actual knowledge" that Mrs. Heller was not "rightfully in possession" of the household goods, and that, therefore, the presumption does not arise.

■ The trial court correctly concluded that Heller was entitled to the

**634**

value of the property at the time of conversion. See Importsales, Inc., v. Lindeman, supra. We conclude that the evidence touching on the question of value was adequate and supports the judgment of $10,000 arrived at by the court.

■ With respect to the further allowance by the trial court of the sum of $1,000, which was awarded to represent the loss of the use of the furnishings up to the time of trial the matter is not so clear. The theory of recovery for conversion here is that at the moment of conversion the damages take the place of the goods themselves.

Appellants complain that the allowance of $1,000 for loss of use of the articles amount to "having the cake and eating it too." This would be true only if the judgment for the value of the property is to bear interest from the date of conversion. It would not be true if the judgment was to bear interest only from the date of entry in the Clerk's office. Of course, if the amount of damages is to bear interest from the date of the conversion, then the interest represents the value of the sum withheld from Mr. Heller. In such circumstances, he should not be entitled to an additional award representing the loss of use of the goods. The trial court, in its judgment, provided that Heller should recover from the plaintiff the sum of of $10,408.44 "with five per cent per annum interest thereon from judicial demand until paid and all costs of this suit." The terms "from judicial demand" are not words with which we are familiar, and we are not able to determine whether they mean from the date demand for return of the goods was made upon the appellant, or whether they relate to the date of the entry of the judgment which, under the judicial code, is the date from which interest shall be allowed on all judgments. See 28 U.S.C.A. Section 1961.

The judgment is affirmed as to all matters except the award of damages of $1,000.00 above discussed, and as to this matter, the case is remanded to the district court to provide either for interest on the amount of damages from the date of conversion, see Importsales v. Lindeman, supra, at page 576, or to provide for the $1,000.00 award in lieu of such interest.

As modified, the judgment is affirmed.