**SOUTHERN PACIFIC TRANSPORTA-
TION CO., Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

Civ. No. R–77–0180.

United States District Court,
E. D. California.

April 17, 1979.

James Diepenbrock, Jack V. Lovell, Carol A. Huddleston, Charity Kenyon, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., for plaintiff.

Herman Sillas, U. S. Atty., Robert Browning Miller, James S. Joiner, Lanny T. Winberry, Sp. Asst. U. S. Attys., Sacramento, Cal., for defendant.

## OPINION

MacBRIDE, Senior Judge.

On April 28, 1973, 18 DODX boxcars owned by the defendant-United States loaded with aerial bombs exploded in the Antelope trainyard of the plaintiff-Southern Pacific Transportation Company (Southern Pacific), near Roseville, California. Since November 7, 1977, this court has heard evidence in the resulting Federal Tort Claims Act (FTCA) suit brought by Southern Pacific. This litigation has required and still requires the resolution of a

number of difficult legal questions,[1] one of which is now before the court for decision: whether Southern Pacific's prayer for damages for loss of use of corporate capital amounts to a prayer for prejudgment interest.

Southern Pacific's complaint states that, as a result of the explosion,

> plaintiff has sustained damages consisting of damage to plaintiff's railroad yards, tracks, and related facilities, damage to and destruction of railroad cars, damage to lading in railroad cars, loss of freight revenues, loss of use of plaintiff's property and capital, increased costs of insurance, sums paid in settlement of third-party claims and sums claimed by persons sustaining injuries or property damage, attorney's fees to investigate and defend against potential litigation, costs of investigation, adjustment, administration and handling of third-party claims, and other damages, and expenses in the aggregate sum of $39,655,535.46.

Complaint at 5. At issue herein is that portion of the total prayer for damages related to the claim for "loss of use of plaintiff's . . . capital," namely $4,449,100.00.

Section 2674 of the FTCA provides in part:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The United States contends that Southern Pacific's claim for damages for "loss of use of capital" constitutes, as a matter of law, a claim for "interest prior to judgment" forbidden by section 2674. Southern Pacific argues that its claim for loss of use is factually and legally different from a claim for prejudgment interest and that it should be permitted to put on proof of the loss of use damages and recover the amount it is

able to prove. To demonstrate the difference between loss of use of corporate capital and prejudgment interest, Southern Pacific has provided an extensive offer of proof.

This court will consider first the question of the law that is to govern the question to be decided; the parties dispute whether the matter is one of federal or state law. Next, because the United States contends that this is an instance in which the waiver of sovereign immunity is to be strictly construed, the court will consider the relevant Supreme Court decisions on that point. Thereafter, the court will deal with the general rules governing the awarding of prejudgment interest against the United States and the nature of prejudgment interest. With that background, the court will consider the cases in which loss of use damages have been awarded against the United States. Finally, the court will determine whether, under the circumstances of this case, the prayer for loss of use of capital constitutes a prayer for prejudgment interest.

**(1)** *Applicability of Federal or State Law*

The first question that must be resolved is whether federal or state law is to control the issue before the court. Southern Pacific contends that the measure of damages under the FTCA is to be determined by reference to state law. This contention is unquestionably correct. *E. g., Felder v. United States*, 543 F.2d 657, 665 (9th Cir. 1976). The United States responds that federal law controls the interpretation of the terms of the Act. That position is equally correct. *Id.* The defect in Southern Pacific's argument that state law governs herein appears in the fact that the issue before the court is the very definition of the phrase "interest prior to judgment" in section 2674. That phrase is part of the federal law, enacted by Congress, and only federal law can govern the terms in federal statutes.

1. *E. g., Southern Pacific Transportation Co. v. United States*, 462 F.Supp. 1193 (E.D.Cal.1978); *id.*, 456 F.Supp. 931 (E.D.Cal.1978); *Chavez v.*

*Southern Pacific Transportation Co.*, 413 F.Supp. 1202 (E.D.Cal.1976).

Once it is clear that the Act authorizes an action for a given type of damages, the prerequisites for obtaining a recovery for such damages, the nature of the proof required, and similar questions are determined by "the legislative and decisional law of the state applicable to private parties." *United States v. Sutro*, 235 F.2d 499, 500 (9th Cir. 1956). In determining whether the Act authorizes such an action, however, the governing body of law is federal. For example, in the *Felder* case, the Ninth Circuit considered the interpretation of section 2674's prohibition on recovery of punitive damages. The issue in the case was whether the damages authorized under state law included an amount that was punitive in nature and thereby precluded by section 2674. The court held:

> The general purpose of damage awards in tort actions has been to compensate plaintiffs for losses incurred. . . .
> But the language of the damages section of the Act is somewhat less clear. The Act contains a built-in tension between the section 2674 language making the United States liable "in the same manner and to the same extent as a private individual under like circumstances" and its numerous safeguards to limit the liability of the Government, and impliedly, to prevent any undue largesse in fixing awards under the statute. One of these safeguards is nonliability for punitive damages. . . .
> [Discussion of legislative history omitted.]
> It appears settled, then, that the purpose of the FTCA is compensation, that is, it is intended to repay the amount of loss or injury sustained by a plaintiff as a proximate result of governmental misconduct which gave rise to the cause of action. Although the Act does not define punitive damages, they may be thought of generally as damages intended to punish or deter. However, we are not bound to a narrow definition. *Since the interpretation and application of the Act is a matter of federal law,*[16] we look to the purpose of the Act for a definition of punitive. Likewise, in deciding if a state

statute is punitive, we look not to its language nor to the state court's characterization of it. Rather, we look to its effect.

*Felder v. United States, supra* at 667, 669\* (footnotes omitted) (emphasis added), *citing* at n.16, *Laird v. Nelms*, 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972); *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). The Ninth Circuit followed the First Circuit's holding in *D'Ambra v. United States*, 481 F.2d 14 (1st Cir.), *cert. denied*, 414 U.S. 1075, 94 S.Ct. 592, 38 L.Ed.2d 482 (1973), wherein the same issue was presented. The First Circuit held: "The [state wrongful death] statute must be judged not by its language, nor by the state court's characterization but by its consequences. *The application of the FTCA is a federal question.*" *Id.* at 18 (emphasis added).

Just as the meaning of the words "punitive damages" in section 2674 is governed by federal law, the meaning of "interest prior to judgment" is to be determined by reference to federal law. Southern Pacific argues that both California and Nevada, two of the states whose law might be applicable, permit an award of damages for the loss of use of corporate capital under similar circumstances when the litigants are private parties. Moreover, Southern Pacific contends that the California statutes distinguish between an award for loss of use and an award of prejudgment interest. These contentions are unavailing. The question before this court is whether, assuming *arguendo* that the applicable state law does permit an award of damages for loss of use of corporate capital, such an award constitutes an award of "interest prior to judgment," as a matter of law, within the meaning of section 2674 of the FTCA.

## (2) *Standards of Construction*

The United States argues that liability for torts is permitted only to the extent that the sovereign immunity of the United States has been waived and that waivers of sovereign immunity are to be strictly construed. This is a general rule of statutory

construction which has been applied in a number of instances, as in the two cases cited by the United States. *United States v. Sherwood*, 312 U.S. 584, 590, 591, 61 S.Ct. 767, 771, 772, 85 L.Ed. 1058, 1063 (1941) (construing the waiver of the Tucker Act); *Bat Rentals, Inc. v. United States*, 479 F.2d 43, 45 (9th Cir. 1973) (construing the waiver in the Administrative Procedure Act).

The Supreme Court has not applied the maxim that waivers of sovereign immunity are to be strictly construed under the FTCA. Instead, the Court has indicated in many instances that the Act is to be construed so as to give effect to its intended purpose of waiving immunity, although due regard is also to be given to the limitations on that waiver. Thus, in *United States v. Aetna Casualty & Insurance Co.*, 338 U.S. 366, 383, 70 S.Ct. 207, 216, 94 L.Ed. 171, 186 (1949), the Court noted that

> the Government relied upon the doctrine that statutes waiving sovereign immunity must be strictly construed. We think that the congressional attitude in passing the Tort Claims Act is more accurately reflected by Judge Cardozo's statement in *Anderson v. John L. Hayes Constr. Co.*, 243 N.Y. 140, 147, 153 N.E. 28: "The exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its rigor by refinements of construction where consent has been announced."

*Accord, United States v. Yellow Cab Co.*, 340 U.S. 543, 555, 71 S.Ct. 399, 407, 95 L.Ed. 523, 532 (1951) (quoting an additional portion of Judge Cardozo's statement: "When authority is given, it is liberally construed."). Similarly, in *Dalehite v. United States*, 346 U.S. 15, 30–31, 73 S.Ct. 956, 965, 97 L.Ed. 1427, 1438 (1953) the Court declared that the FTCA

> is another example of the progressive relaxation by legislative enactments of the rigor of the immunity rule. Through such statutes that change the law, organized government expresses the social purposes that motivate its legislation. Of course, these modifications are entitled to a construction that will accomplish their

aim, that is, one that will carry out the legislative purpose of allowing suits against the Government for negligence with due regard for the statutory exceptions to that policy. In interpreting the exceptions to the generality of the grant, courts include only those circumstances which are within the words and reason of the exception.

This framework for statutory construction is expressed in two other Supreme Court decisions on which Southern Pacific relies. In *Indian Towing Co. v. United States*, 350 U.S. 61, 68–69, 76 S.Ct. 122, 126, 100 L.Ed. 48, 55 (1955), the Court indicated that construction of the Act must follow the intent of Congress:

> The broad and just purpose which the [FTCA] was designed to effect was to compensate the victims of negligence in the conduct of governmental activities in circumstances like unto which a private person would be liable and not to leave just treatment to the caprice and legislative burden of individual private laws. Of course, when dealing with a statute subjecting the Government to liability for potentially great sums of money, this Court must not promote profligacy by careless construction. Neither should it as a self-constituted guardian of the Treasury import immunity back into a statute designed to limit it.

Finally, in *Rayonier, Inc. v. United States*, 352 U.S. 315, 319, 77 S.Ct. 374, 377, 1 L.Ed.2d 354, 358 (1957), the Court noted that "the very purpose of the Tort Claims Act was to waive the Government's traditional all-encompassing immunity from tort actions and to establish novel and unprecedented governmental liability." In view of this purpose, the Court declared: "There is no justification for this Court to read exemptions into the Act beyond those provided by Congress." *Id.* (footnote omitted).

■ None of these cases indicates that the maxim of strict construction is to be applied in the context of the FTCA. As the *Felder* court framed the issue, the Act embodies a tension between the waiver of sovereign immunity to permit United States

liability "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, and the limitations on that waiver which include the prohibition on liability "for interest prior to judgment." *Id.* This court must resolve this tension under the circumstances of this case to determine whether Southern Pacific's prayer for damages for loss of use of corporate capital falls within the prohibition. That decision is to be made by reference to the language and intent of Congress, and the maxim requiring strict construction is inapplicable.

(3) *Introductory Comments on Interest*

■■ The long recognized rule is that the United States is not liable for interest unless there is some special circumstance to set the case apart from the norm. Thus, in *Seaboard Air Line R. R. v. United States,* 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664 (1923), the Supreme Court declared: "The rule is that, in the absence of a stipulation to pay interest or a statute allowing it, none can be recovered against the United States upon unpaid accounts of claims." *Id.* 261 U.S. at 304, 43 S.Ct. at 355, 67 L.Ed. at 669, *followed in Boston Sand & Gravel Co. v. United States,* 278 U.S. 41, 42–48, 49 S.Ct. 52, 53, 73 L.Ed. 170, 176 (1928). This general rule does not apply when the United States has, by contract, made itself liable for prejudgment interest. Similarly, there are certain instances in which statutes have explicitly or implicitly provided for liability for prejudgment interest. *E. g.,* 46 U.S.C. §§ 743, 745 (the Suits in Admiralty Act explicitly permits interest to run against the United States from the date of the filing of the action). *See also West v. Harris,* 573 F.2d 873, 882–84 (5th Cir. 1978) (prejudgment interest required by implication under the National Flood Insurance Act for policies issued under the Act). In condemnation cases under the eminent domain power, the award of just compensation includes interest on the award from the date of the taking. The courts have recognized that interest must be awarded in such instances in order to afford full "just compensation" for the land taken. *E. g., Sea-*

*board Air Line R. R. v. United States, supra* 261 U.S. at 307, 43 S.Ct. at 356, 67 L.Ed. at 670; *Shealy v. United States,* 37 F.2d 918 (W.D.S.C.1930).

There is no question but that a person injured by the United States suffers an economic detriment from application of the general rule that prejudgment interest may not be awarded on the damages to be paid for the injury. The Supreme Court fully recognized that fact in the *Boston Sand & Gravel* decision in 1928. In that admiralty action arising from a collision of two vessels, one owned by the United States, the lower courts had concluded that both plaintiff and the United States were at fault. Under the admiralty practice of comparative negligence, the damages were to be divided, and the plaintiff sought interest on its share of the damages. After starting with the general rule that the United States is not liable for interest in the absence of an express provision therefor, the Court declared:

What the Act authorizes the Court to ascertain and allow is the "amount of the legal damages sustained by reason of said collision." Of these interest is no part. It might be in the case of the detention of money. But this is not a claim for the detention of money, nor can any money be said to have been detained. When a jury finds a man guilty of a tort or a crime it may determine not only the facts but also a standard of conduct which he is presumed to have known and was bound at his peril to follow. . . . But legal fiction never reached the height of holding a defendant bound to know the estimate that a jury would put upon the damage that he had caused. . . . [T]he cause of action is the damage, not the detention of money to be paid for it

. . . . .

*Boston Sand & Gravel Co. v. United States, supra* 278 U.S. at 48, 49 S.Ct. at 54, 73 L.Ed.2d at 177. Justice Sutherland filed a vigorous dissent, arguing that an award of interest was essential to provide full compensation for the injuries suffered to the plaintiff. He urged:

It is said that when interest is allowed it is *no part of the damages.* But, very clearly, I think, the settled rule is to the contrary. When the obligation to pay interest arises upon contract, it is recoverable thereon as damages for the failure to perform; "and when recoverable in tort it is chargeable on general principles as an additional element of damage for the purpose of full indemnity to the injured party." 1 Sutherland, Damages, 4th ed. § 300, p. 939.

*Id.*, 278 U.S. at 50, 49 S.Ct. at 54, 73 L.Ed.2d at 177–78. Although Justice Sutherland's arguments have great appeal, they have been rejected by subsequent decisions as they were rejected by the majority of the Justices at the time. A unanimous Court ruled in *United States v. Alcea Band of Tillamooks*, 341 U.S. 48, 49, 71 S.Ct. 552, 552, 95 L.Ed. 738, 739–40 (1951), to reaffirm the holding of *Boston Sand & Gravel.* The per curiam Court declared:

It is the "traditional rule" that interest on claims against the United States cannot be recovered in the absence of an express provision to the contrary in the relevant statute or contract. This rule precludes an award of interest even though a statute should direct an award of "just compensation" for a particular taking. The only exception arises when the taking entitles the claimant to just compensation under the Fifth Amendment. Only in such cases does the award of compensation include interest.

*Id.* 341 U.S. at 49, 71 S.Ct. at 552, 95 L.Ed.2d at 739–40 (citations omitted). *See also Peoria Tribe of Indians v. United States*, 390 U.S. 468, 470–71, 88 S.Ct. 1137, 1138, 20 L.Ed.2d 39, 42 (1968); *Tekronix, Inc. v. United States*, 552 F.2d 343 (Ct.Cl.) (en banc), *modified on other grounds*, 557 F.2d 265 (Ct.Cl.1977).

This court could find no expressed rationale for the inconsistency between eminent domain cases in which the injured party recovers interest on the award from the date of the taking and tort cases in which the injured party must absorb the loss of the use of the money that he is ultimately

awarded. The present inconsistency is the outgrowth of historical development of two different doctrines of law: the Fifth Amendment law of just compensation and the common law doctrine of sovereign immunity. As to the former, the Constitution itself demands the payment of just compensation, and, in the words of the Supreme Court:

The requirement that "just compensation" shall be paid is comprehensive, and includes all elements, and no specific command to include interest is necessary when interest or its equivalent is a part of such compensation. Where the United States condemns and takes possession of land before ascertaining or paying compensation, the owner is not limited to the value of the property at the time of the taking; he is entitled to such addition as will produce the full equivalent of that value, paid contemporaneously with the taking. Interest at a proper rate is a good measure by which to ascertain the amount so to be added.

*Seaboard Air Line R. R. v. United States, supra*, 261 U.S. at 306, 43 S.Ct. at 356, 67 L.Ed. at 670. Unlike eminent domain cases in which the United States' liability for the injury was recognized from the inception of the nation, the decision to accept liability as to tort cases is a new development grown from the dissatisfaction with the inherent injustice of the defense of sovereign immunity. The Supreme Court described the history of the FTCA as follows:

The Tort Claims Act was not an isolated and spontaneous flash of congressional generosity. It marks the culmination of a long effort to mitigate unjust consequences of sovereign immunity from suit. While the political theory that the King could do no wrong was repudiated in America, a legal doctrine derived from it that the Crown was immune from any suit to which it has not consented was invoked on behalf of the Republic and applied by our courts as vigorously as it had been on behalf of the Crown. As the Federal Government expanded its activities, its agents caused a multiplying num-

ber of remediless wrongs—wrongs which would have been actionable if inflicted by an individual or a corporation but remediless solely because their perpetrator was an officer or employee of the Government.

*Feres v. United States*, 340 U.S. 135, 139–40, 71 S.Ct. 153, 156, 95 L.Ed. 152, 157 (1950). The FTCA is the congressional decision to permit suits and damage recoveries against the United States. Having decided to waive the existing sovereign immunity, Congress imposed certain caveats in the waiver, one of which provides that the United States shall not be liable for interest prior to judgment. The justification for this limitation on the amount of recovery is not explained by the legislative history of the FTCA. One apparent effect is that plaintiffs who have filed suit under the FTCA are encouraged to prosecute their cases diligently in order that their losses caused by the lack of recovery for prejudgment interest may be minimized. Whatever the purpose of the prohibition, it remains as a remediless wrong that those who are damaged by the negligent act of a Government employee must suffer.

■ Southern Pacific contends that loss of use of corporate capital must necessarily be different from prejudgment interest because, it contends, the actual monetary losses incurred from the loss of use of capital

can be proven. Thus, the implication running throughout Southern Pacific's arguments is that the prejudgment interest proscribed by section 2674 must involve something other than actual losses. The implication is erroneous. The cases are clear that prejudgment interest represents part of the compensation for the injury suffered. Thus, the Ninth Circuit declared in *Rosa v. Insurance Co. of Pa.*, 421 F.2d 390, 393 (9th Cir. 1970), that "Appellant erroneously assumes that prejudgment interest is in the nature of a penalty. The objective, rather, is to provide 'just compensation' for the plaintiffs." *Rosa* was followed in *Socony Mobil Oil Co. v. Texas Coastal & International, Inc.*, 559 F.2d 1008, 1009 (5th Cir. 1977), wherein the Fifth Circuit stated:

> Prejudgment interest is not awarded as a penalty, but is in the nature of compensation for the use of funds. *See Rosa v. Insurance Company* . . . . In the instant case the defendants have had the use of money during the entire period of this protracted litigation, to which the plaintiffs have ultimately been found entitled.

As the cases recognize, an injured party suffers an economic injury from the fact that he did not receive the monies to which he was entitled immediately after the injury which created the entitlement.[2] The in-

---

2. The Fourth Circuit's decision in *Chesapeake & Ohio Ry. v. Elk Refining Co.*, 186 F.2d 30 (4th Cir. 1950), is representative:

 The damage was done in May 1948, and the award was not made until May 1950, two years later. . . . [I]f plaintiffs are allowed in the judgment only the amount of the damage that was sustained two years before the award, it is manifest that they have not been awarded full compensation. An award two years after an injury occurs is certainly not the equivalent of an award made at the time of the injury; and the great weight of authority is to the effect that full compensation for damage to or destruction of property requires that, even in the case of unliquidated demands, account be taken of the period that has elapsed between the damage and the award and that allowance be made for interest. . . . The reason for the rule is well stated by the Supreme Court of Utah in *Fell v. Union Pacific R. Co.*, 32 Utah 101, 88 P.

1003, 1005 . . . where . . . the court said:

 . . . . .

 Is there any reason why a person sustaining injury and damage to his property from the negligent act of another should not receive just what he has lost as nearly as this may be accomplished in a court of justice? If a person's property is destroyed or damaged, why is he not entitled to be compensated to the full extent of its value in money so that he may replace the same with other property of a like nature? If on the day of its injury or destruction he restores or replaces it with his own money, why is he not entitled to interest on that money to the date of repayment? If he had loaned the money to some one, he certainly would be entitled to interest, and, if he borrowed it from some one, he would likely have to pay interest for its use. By being awarded legal interest, therefore, he is simply placed in statu quo, and nothing short

quiry, then, when the defendant is the United States, is not whether the plaintiff has suffered an economic injury from the loss of use of the funds ultimately comprising the damage award. It obviously has. The inquiry is whether the kind of economic injury is "interest prior to judgment" within the meaning of the prohibition contained in section 2674.

(4) *Cases Awarding Loss of Use Damages*

Southern Pacific correctly notes that there are several cases under the FTCA in which the courts have awarded loss of use damages; none of these cases, however, involves loss of use of corporate capital. Southern Pacific primarily relies on *Hatahley v. United States*, 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065 (1955), an action in which plaintiffs sought damages for the tortious destruction of their horses and burros by agents of the United States. The Supreme Court concluded that the United States was liable under the Act and noted that the district court had awarded $100,000 in damages, the amount sought by the plaintiffs. On that point, the Court stated:

> Apparently this award was based on the value of the horses, consequential damages for deprivation of use and "mental pain and suffering." Under the Federal Tort Claims Act, damages are determined by the law of the State where the tortious act was committed, 28 U.S.C. § 1346(b), 28 U.S.C.A. § 1346(b), subject to the limitations that the United States shall not be liable for "interest prior to judgment or for punitive damages," 28 U.S.C. § 2674, 28 U.S.C.A. § 2674. But it is necessary in any case that the findings of damages be made with sufficient particularity so that they may be reviewed. Here the District Court merely awarded the amount prayed for in the complaint. There was no attempt to allot any particular sum to any of the 30 plaintiffs who owned varying numbers of horses and burros. There can be no apportionment of the award among the petitioners un-

less it be assumed that the horses were valued equally, the burros equally, and some assumption is made as to the consequential damages and pain and suffering of each petitioner. These assumptions cannot be made in the absence of pertinent findings and the findings here are totally inadequate for review.

*Id.* 351 U.S. at 182, 76 S.Ct. at 752, 100 L.Ed. at 1074. The Supreme Court remanded the case for the appropriate findings to be made. Southern Pacific reads this case as indicating that the Supreme Court "implicitly approved" the award of loss of use damages. This reading is not supported by the decision itself, however, since there is no indication that the propriety of loss of use damages was presented to the Court. Nonetheless, the subsequent history of the case reveals that loss of use damages were apparently awarded. After the remand, the district court took evidence on damages and awarded $187,017.50, valuing the horses and burros at $395 each, the pain and suffering of each plaintiff at $3500, and awarding damages "for one-half of the value of the diminution of the individual herds of sheep, goats and cattle between the date the horses and burros were taken in 1952 and the date of the last hearing in 1957." *United States v. Hatahley*, 257 F.2d 920 (10th Cir.), *cert. denied*, 358 U.S. 899, 79 S.Ct. 222, 3 L.Ed.2d 148 (1958). On appeal from that award, the Tenth Circuit noted that

> plaintiffs were entitled to the market value, or replacement cost, of their horses and burros as of the time of the taking, plus the use value of the animals during the interim between the taking and the time they, acting prudently, could have replaced the animals.

*Id.* at 923. Although the Tenth Circuit approved the decision to award loss of use damages, it concluded that the district court had arrived at the amount of the award improperly. The loss of use damages arose because, as plaintiffs testified, they could

---

of this is full compensation, and that is what the law aims to accomplish.

*Id.* at 33; *accord, Essex House v. St. Paul Fire & Marine Ins. Co.*, 404 F.Supp. 978, 995 (S.D. Ohio 1975).

not maintain their herds of sheep, goats and cattle without the horses and burros and that they suffered a reduction in their herds thereby. The district court had assigned a dollar value to the sheep and goats of $15 per head and to the cattle of $150 per head and had held that the loss of use damages equalled 50 percent of the herd reductions between 1952 and 1957. The Tenth Circuit found this approach pure speculation because no consideration was given to the age or condition of the animals or to the other possible reasons for herd reductions. The court did note that plaintiffs' evidence also showed that the loss of the horses and burros resulted in a reduced ability to grow crops, difficulties in obtaining transportation for water, wood and food, and a curtailment of travel for medical care. The court declared:

> These were factors upon which damages for loss of use could have been based. This does not exclude the right to damages for loss of profits which may have resulted from reduction of the number of livestock, or actual loss of the animals, if the unlawful acts of the defendant's agents were the proximate cause of the loss and were proved to a reasonable degree of certainty. . . . But the right to such damages does not extend forever, and it is limited to the time in which a prudent person would replace the destroyed horses and burros. The law requires only that the United States make full reparation for the pecuniary loss which [its] agents inflicted.

*Id.* at 924. The Tenth Circuit remanded for yet another trial to determine the damages.

As can be seen, the Tenth Circuit's *Hatahley* decision does support an award of loss of use damages, but the loss of use at issue was the loss of use of the horses and burros for the production of income, not the capital investment that those animals represented. There is no indication at all that, had the plaintiffs purchased new horses and burros and then sought to recover damages for the loss of use of the capital spent on the horses and burros, the court would have deemed that prayer for damages proper under the FTCA.

In addition to *Hatahley*, Southern Pacific relies on *Russell v. United States*, 113 F.Supp. 353 (M.D.Pa.1953), an FTCA action for damages arising from an accident in which a Post Office bus hit a tractor trailer which then crashed into plaintiffs' rented house. The court concluded that, as a result of the damage to the house, "it was rendered untenantable and the plaintiffs lost the value of their lease . . . and were forced to obtain other quarters . . . .." The court found that plaintiffs suffered the following item of damage:

> Loss of the use of leased premises in the amount of $84.00, composed of articles as follows:
>
> Cost of leasing other premises ....... $74.00
> Cost of storage for furniture ........ $10.00

*Id.* at 355. Just as in *Hatahley*, the loss of use damages in *Russell* constituted the amount of damage that the plaintiffs suffered as a consequence of the loss, permanent or temporary, of their property. Again, there is no hint that plaintiffs could have recovered for the damages occasioned by their having to commit capital to the leasing of alternative housing, a form of damages that would approximate the loss of corporate capital sought herein. The same distinction appears in the other loss of use cases under the FTCA. *E. g., Executive Jet Aviation, Inc. v. United States*, 507 F.2d 508 (6th Cir. 1974) (complaint sufficient to allege a claim for loss of use of a damaged aircraft); *United States v. Sutro*, 235 F.2d 499 (9th Cir. 1956) (recovery for the loss of the rental value of property caused by negligence in the operation of a sewage plant); *Atlantic Aviation Corp. v. United States*, 456 F.Supp. 121, 126 (D.Del. 1978) (recovery for loss of use of an airplane denied because of inadequate proof of "actual" losses incurred due to the loss of use); *Lightenburger v. United States*, 298 F.Supp. 813, 847 (C.D.Cal.1969), *rev'd on other grounds*, 460 F.2d 391 (9th Cir.), *cert. denied*, 409 U.S. 983, 93 S.Ct. 323, 34 L.Ed.2d 248 (1972) (airplane crash damaged two planes on the ground and their owner was held entitled to damages "for the reasonable cost of repairing its planes and the

reasonable value of renting substitute planes while they were being repaired"); *Laney Tank Lines, Inc. v. United States*, 237 F.Supp. 205, 206–07 (E.D.S.C.1965) (recovery for "loss of use for a reasonable time of the destroyed chattel," a tractor and trailer); *Maurer v. United States*, 219 F.Supp. 253, 256 (E.D.Wis.1963) (damages for loss of use of a truck denied for failure of proof).

 These cases all indicate that damages for the loss of use of the damaged or destroyed property can properly be awarded under the FTCA. Although Southern Pacific is thus correct that loss of use damages have been awarded in the past, none of the cases cited to or found by the court give any hint that loss of use of corporate capital expended for replacement of the damaged or destroyed property constitutes the type of loss of use damages recoverable under the authority of these cases. Examination of the complaint reveals that Southern Pacific seeks damages not only for loss of use of corporate capital but also for loss of use of its property. Presumably the latter prayer includes such damages as those occasioned by the loss of use of the Antelope trainyard which was devastated by the explosions and required massive repairs or the loss of use of the engines and freight cars damaged during the explosions which had to be repaired or replaced. These injuries fall within the precedent of the loss of use cases discussed above and, if proven satisfactorily, might be recovered under the FTCA.[3] None of these cases offers precedent, however, for an award of damages for the loss of use of corporate capital.

### (5) *"Interest Prior to Judgment"*

The FTCA does not define the phrase "interest prior to judgment." Reference to the legislative history of the Act sheds no light on the provision prohibiting interest prior to judgment, hence this court must attempt to construe the intent of Congress in the absence of an explicit statement of that intent.

Various definitions of the term "interest" make reference to its relationship to the use of money. Thus, the Supreme Court stated in *Deputy v. Du Pont*, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940), that the "usual import" of the term "interest" is " 'the amount which one has contracted to pay for the use of borrowed money,' " and added that "In the business world 'interest on indebtedness' means compensation for the use or forbearance of money." *Id.* 308 U.S. at 498, 60 S.Ct. at 368, 84 L.Ed. at 424, *quoting Old Colony R. R. v. Commissioner*, 76 L.Ed. 484, 489 (1932). Other courts have defined "interest" as "the compensation paid for the use of money," *e. g., Jaglom v. Commissioner*, 303 F.2d 847, 849 (2d Cir. 1962), or "compensation for the use of money." *E. g., Candiano v. Moore-McCormack Lines, Inc.*, 407 F.2d 385, 387 (2d Cir. 1969); *accord, Clark v. Paul Revere Life Ins. Co.*, 417 F.2d 683, 686 (8th Cir. 1969); *citing* 45 Am.Jur.2d, Interest § 1. Reference to dictionaries reveals the same basic definition:

> The price or rate of premium per unit of time that is paid by a borrower for the use of what he borrows [and] a rate per

---

**3.** There might be, in fact, a problem of double recovery if Southern Pacific were to recover for loss of use of corporate capital and for loss of use of property. In *North American Van Lines, Inc. v. Heller*, 371 F.2d 629, 634 (5th Cir. 1967), the court held that the defendant van line had converted plaintiff's household furnishings, and the trial court awarded $1,000 for "loss of use of the furnishings." On appeal, the van line complained

that the allowance of $1,000 for loss of use of the articles amount[s] to "having the cake and eating it too." This would be true only if the judgment for the value of the property is to bear interest from the date of conversion. . . . Of course, if the amount of damages

is to bear interest from the date of conversion, then the interest represents the value of the sum withheld from Mr. Heller. In such circumstances, he should not be entitled to an additional amount representing the loss of use of the goods.

Based on this reasoning, the Fifth Circuit remanded so that the trial court might provide either "interest on the amount of damages from the date of conversion [or] provide for the $1,000.00 award in lieu of such interest." *Id.* Under the circumstances before this court, given the conclusion that will be reached, it is not necessary to determine the extent to which there might be such a double recovery prayed for in Southern Pacific's complaint.

cent of money paid for the use of money or the forbearance of demanding payment of a debt . . . .

Webster's New International Dictionary 1294 (2d Ed. Unabridged 1939).

■ In the absence of a showing that some other meaning was intended, this court concludes that Congress intended to give the term "interest" its normal and customary meaning. Thus, the phrase "interest prior to judgment" must mean compensation for the use of money damages prior to the judgment awarding those damages. In other words, the phrase must be intended to prohibit the award of compensation that represents either the advantage to the United States from its possession of the money damages from the time of the injury to the date of judgment or, conversely, the disadvantage or loss to the plaintiff occasioned by the fact that the payment of the damage award occurred some months or years after the injury was suffered. Applying a simple example, assume that a Government employee driving a car on the job negligently collides with and destroys the plaintiff's car which is worth $1,000. Two years later, plaintiff obtains a judgment for the accident in which he is paid $1,000 for the destruction of his car. Obviously, the United States has benefitted from the possession of that sum during the two years. Just as obviously, the plaintiff suffered a detriment in that he has not had possession of those funds. Clearly, either way the advantage or detriment is measured, the subject of the measurement is prejudgment interest. It matters not whether, during the two year period, the plaintiff would have placed the $1,000 in a bank account to earn a percentage return, whether he would have used the $1,000 to fund an investment venture, or whether he would simply have enjoyed the use of the $1,000 for creative comforts. The fact is that he was deprived of the benefit of possessing and using that sum during the two years prior to judgment. The FTCA forbids recovery for that kind of detriment.

■ Southern Pacific variously describes the nature of the recovery it seeks to define as loss of use of corporate capital. In its opening brief on the subject, it referred to

the loss of use of corporate capital diverted from regularly planned business projects to the payment of expenses and costs caused by the Roseville bomb explosions. . . . [T]his loss of its resources represents lost business opportunities with an ascertainable market value and . . . recovery of that value is necessary to fully compensate plaintiff for the damages . . . .

Southern Pacific's Brief of July 7, 1978 at 2. Southern Pacific confidently asserted that it could "conclusively demonstrate the factual distinction between loss of use of corporate capital and an award of prejudgment interest." *Id.* A later portion of the brief repeated that theme:

Southern Pacific was forced to divert a substantial portion of its resources away from other planned projects to costs and expenses resulting from the effect of the explosions. This impairment of capital required plaintiff to forego business opportunities which would have yielded a return calculable with reasonable certainty.

*Id.* at 6. Quite obviously, Southern Pacific seeks to recover for the loss of use of money, but compensation for the loss of use of money is, by definition, interest.

■ Southern Pacific would have the court conceptualize its claim for loss of use of capital as amounting to the costs incurred in mitigating losses. Thus, it is urged that

Plaintiff's duty to mitigate damages is undisputed and it is likewise indisputable that Southern Pacific's rapid restoration of the vital Roseville Yard and payment of other costs attributable to the explosions greatly reduced the damages that plaintiff would otherwise have sustained by reason of the bombs' explosion. The reasonable cost involved in mitigating damages is always recoverable provided it does not exceed the damages prevented or reasonably anticipated. . . . In this action one of the costs of mitigating

damages was the value of the lost business opportunities which plaintiff would otherwise have engaged in but for the need to divert its resources to repair the damages caused [to the trainyard].

*Id.* at 6–7. The concluding portion of the brief returns to this mitigation argument:

the United States may not be compelled to compensate plaintiff for the value to defendant of the loan effectively extended to defendant by plaintiff during the period between the time plaintiff's loss arose and the time a judgment for damages is rendered against defendant. In contrast, the United States must compensate plaintiff for costs of reasonable mitigation efforts including loss of use of corporate capital and consequent lost business opportunities caused by the diversion of a substantial portion of plaintiff's resources to the restoration of the Roseville yard . . . .

*Id.* at 10. The difficulty with this argument that the loss of use claim for damages amounts to a claim for recovery of funds spent in mitigation of losses is that the nature of interest cannot be changed by reference to the reason the capital was spent. In other words, the fact that the expenditure might have been occasioned by a need to mitigate damages does not alter the conclusion that a claim for compensation for the loss of use of that capital is a claim for interest.[4]

■ Southern Pacific's offer of proof explains that there are several methods whereby the damages comprising loss of use of corporate capital may be measured. One of these is based on the "cost of capital." The offer of proof states that Southern Pacific, like other railroads, suffered from a capital shortage and that

the effect of the Roseville explosion was to substitute those Southern Pacific capital expenditures required as a result of the Roseville explosion for other discretionary capital expenditures. . . . [O]ne method of determining the cost of capital or the lost return on capital which Southern Pacific has expended because of the Roseville explosion, would be to measure the rate of return which the company would have realized on those projects deferred or delayed because the required funding was utilized instead for expenditures related to the Roseville explosion. Another method of determining the cost of capital which Southern Pacific has expended because of the Roseville explosion would be to measure Southern Pacific's current (1973) cost of capital.

Southern Pacific's Offer of Proof, filed January 19, 1979, at 10. References to the rate of return on the capital spent make it clear that the damages sought really amount to compensation for the use of money. Unlike the destroyed car plaintiff, who might lose only the interest on a bank deposit, Southern Pacific would have used the capital of which it has been deprived for important and potentially profitable corporate

---

4. The *Hatahley* case illustrates these principles. The Tenth Circuit ruled that plaintiffs would be entitled to damages occasioned by the loss of use of the horses and burros. Proof of the damages might consist, in the court's view, of proof that fewer crops had been grown as a result of the loss of horses and burros, proof that herds of sheep, goats and cattle had been reduced and that profits had been lost thereby, or proof of the cost of obtaining alternate transportation of goods or persons. Nevertheless, the court declared that "the right to such damages does not extend forever, and it is limited to the time in which a prudent person would replace the destroyed horses and burros." *United States v. Hatahley, supra* at 257 F.2d at 924. Just as the *Hatahley* plaintiffs were entitled to seek damages for the loss of use of the horses and burros, Southern Pacific is entitled to seek recompense for the loss of use of the trainyard and freightcars during the time prior to their repair or replacement, subject to the same limitation as in *Hatahley* that the loss of use damages are limited to the time in which a prudent person would act. In each instance, the injured party is under an obligation to mitigate damages within a reasonable time, and the right to recover for the loss of use of the damaged or destroyed property is limited by that obligation. Although the obligation to mitigate imposes an obligation to incur capital expenditures on the injured party, the loss of use of that capital is not a compensable injury under the FTCA. The fact that capital may be spent in mitigation of damages is irrelevant; the claim remains one for loss of use of money, namely, interest.

projects. One example is the building of the Strang Yard in Texas to relieve congestion at the existing Houston trainyard and to meet the projected growth for that area. Work on the Strang Yard had to be postponed for a considerable time due to the lack of capital; Southern Pacific contends that it can prove the damages resulting from that postponement. The fact that Southern Pacific might prove actual damages from the loss of use of corporate capital does not change the nature of those damages. Even assuming that Southern Pacific can prove these damages, they remain equivalent to compensation for the loss of the use of money, in short, interest.[5]

This court is fully prepared to believe that Southern Pacific can, in fact, prove actual damages arising from the loss of the use of its corporate capital during the pendency of this litigation. Common sense is sufficient to demonstrate that there is an actual injury. In the words of the Fourth Circuit, it is "manifest" that a plaintiff does not receive "full compensation" for his injuries when the payment does not include an amount equivalent to the deprivation of the use of the damages actually suffered on the date of the tort. *Chesapeake & Ohio Ry. v. Elk Refining Co., supra* 186 F.2d at 33. The FTCA provides, nonetheless, that those injured by tortious conduct are not entitled to receive the "full compensation" to which they might be entitled under state law because they may not receive "interest prior to judgment." The prohibition on prejudgment interest necessarily results in awards that fall short of the goal of making the

injured party whole. Congress has determined not to waive the United States' sovereign immunity for purposes of prejudgment interest awards. If plaintiff wishes to object to that determination, the proper forum is the legislature, not the courts.

Accordingly, this court holds that Southern Pacific is not entitled to recover damages occasioned by the loss of use of corporate capital. Compensation for the loss of use of money is the equivalent of interest, and section 2674 of the FTCA forbids an award that includes "interest prior to judgment."

IT IS SO ORDERED.

---

5. The United States comments in its closing brief:

> it seems clear that had Southern Pacific taken out a loan to cover the expenses of reconstruction of the Roseville yard, the interest charged against such a loan would be a proper element of damages because it would have been a loss *actually* incurred.

United States' Brief, filed February 7, 1979, at 4. This statement erroneously assumes that there is no "actual" loss involved in a denial of prejudgment interest. No rational distinction can be drawn between the interest paid on a loan necessitated by the explosions and the losses occasioned by what amounts to an internal loan whereby Southern Pacific withdrew funds allocated for one project to reassign

them to the reconstruction of the trainyard. Both claims would constitute compensation for the use of money. If a company uses its own funds, then it suffers a loss of use of capital that might have otherwise generated a profit and it is damaged to the extent of the loss of that anticipated profit. If the company uses funds borrowed from another entity, then it suffers under a requirement that it pay interest on the loan, which requirement occurs because the award of damages for the injury has not yet been paid. Under this logic, neither injury is compensable because of the bar to awards of prejudgment interest. Cf. *Boh Bros. Construction Co. v. M/V Tag-Along*, 569 F.2d 217, 219 (5th Cir.), *aff'd after remand*, 577 F.2d 303 (5th Cir. 1978).